## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

REGINALD WILLIAMS,                    )
                                      )
              Petitioner,             )          Case No. 11 C 266
                                      )
       v.                             )          Judge Joan H. Lefkow
                                      )
ROBERT WERLINGER,                     )
                                      )
              Respondent.             )

### OPINION AND ORDER

On April 12, 2011, Reginald Williams filed a petition for a writ of habeas corpus under 28 U.S.C § 2241 ("the petition") against the warden of the Federal Correction Institution in Oxford, Wisconsin, seeking relief from a disciplinary conviction and reinstatement of his lost good-time credits on various constitutional and administrative grounds.[1]  (Dkt. 1.)  For the following reasons, the petition for writ of habeas corpus is denied.[2]

### BACKGROUND

Williams is serving a prison term of 120 months, followed by eight years supervised release, after being convicted in the Southern District of New York for conspiracy to possess with the intent to distribute more than 35 but less than 50 grams of cocaine base in violation of 21 U.S.C. § 846.  (Dkt. 1 at 4.)  From May 15, 2008 to May 19, 2010, Williams was housed at the Federal Correctional Institution in Fort Dix, New Jersey ("FCI-Fort Dix").  (Dkt. 1 at 4.)  The

---

[1] The petition originally named Carol Holinka as the respondent in this suit, as she was the warden of the prison at the time Williams filed his petition.  Robert Werlinger replaced Holinka and was thereby substituted as the named respondent.

[2] Williams initially filed in the United States District Court for the Western District of Wisconsin, which had proper jurisdiction pursuant to 28 U.S.C § 2241.  The case was subsequently transferred to this court to perform the duties of the Western District of Wisconsin on October 7, 2013.  (*See* dkt. 12.)

Federal Bureau of Prisons ("the FBP") then transferred him to the Federal Correctional Institution in Oxford, Wisconsin ("FCI-Oxford") where he remains in custody.  (Dkt. 9 at 3.)

On March 29, 2010, while in custody at FCI-Fort Dix, Williams was written up for violating various FBP Codes as enumerated in the Code of Federal Regulations, 28 C.F.R. § 541.13, Tbl. 3.[3]  (Dkt. 1, Ex. 1 at 1.)  According to the incident report, a FCI-Fort Dix officer pat-searched Williams during a routine shakedown and felt something in the waistband of Williams' pants.  (*Id.* at 2.)  Williams refused to turn over the item and attempted to run from the room.  (*Id.*)  The officer stated that Williams used his shoulder to strike the officer in his attempt to escape, prompting the officer to call for assistance.  (*Id.*)  Once Williams was restrained, officers found a Samsung cellular telephone in his waistband.  (*Id.* at 2-3.)  Williams was subsequently charged with violating various FPB codes, including (1) 108 - Possession of a Hazardous Tool ("Code 108"), for possession of a cellular telephone and charger; (2) 224 - Assaulting any person ("Code 224"); (3) 316 - Being in an unauthorized Area ("Code 316"); and (4) 305 - Possession of anything unauthorized ("Code 305").  (*Id.* at 1.)  The Warden at FCI-Ft. Dix had issued a memorandum to the prisoner population on December 28, 2009, while Williams was at FCI-Ft. Dix, explicitly warning inmates that those "found in possession of electronic communication devices, or related equipment such as a cell phone, cell phone charger, . . . etc., will be charged with a violation of Code 108, Possession Manufacture, or Introduction of a Hazardous Tool[.]"  (*Id.*, Ex. 3.)  The Warden had issued similar memoranda on May 5, 2005, and October 4, 2006.  (*Id.*, Exs. 1-2.)

Williams received a copy of the incident report on March 30, 2010.  (*Id.*)  On April 2, 2010, Williams met with a case manager, T. McKinnon, who advised him of his rights at his

---

[3]  The Code of Federal Regulations was updated in 2010 and the pertinent section is now codified at 28 C.F.R. § 541.3, Tbl. 1.

upcoming disciplinary hearing.  (*Id.*)  Williams waived staff representation at his April 14, 2010

disciplinary hearing, which was held before Discipline Hearing Officer ("DHO") A. Boyce.  (*Id.*)

DHO Boyce was presented with Williams' own testimony and written evidence.  (*Id.* at 1-2.)

Shortly thereafter, on May 19, 2010, Williams was transferred to FCI-Oxford.  (Dkt. 1 at 4.)

On May 28, 2010, DHO Boyce found Williams had violated Codes 108, 224 and 316, but

made no finding as to the Code 305 violation.  (*Id.* at 3.)  As punishment for the Code 108

violation, DHO Boyce gave Williams 30 days of disciplinary segregation, disallowed 40 days of

good conduct time, deprived him of his phone privileges for 18 months, and caused him to forfeit

216 days of non-vested good conduct time.[4]  (*Id.*)  On June 9, 2010, Williams received the DHO

packet, which included a copy of the decision and the discipline imposed, via institutional mail.

(*Id.* at 4.)  The DHO packet advised Williams of his right to appeal within twenty calendar days.

(*Id.*)

Williams filed a regional administrative appeal on November 30, 2010, which was

received by the North Central Regional Director on December 16, 2010—long after the twenty-

day period to file an appeal had lapsed.  (Dkt. 1, Ex. 2 at 2.)  Williams acknowledged that he

filed his appeal after the twenty-day deadline in a letter accompanying his appellate filing, but he

argued that the regional director should accept his appeal because Williams had been "in transit

from May 19, 2010 until November 22, 2010."  (Dkt. 1, Ex. at 1.)  He stated that he received the

DHO report on July 9, 2010, while he was in transit, but had only received his property and legal

documents seven days after arriving at FCI-Oxford.  (*Id.*)  Substantively, Williams did not

dispute in his appeal that he had been in possession of the cellular telephone.  (Dkt. 1, Ex. 3.)

Instead, Williams argued that possession of the cellular telephone had been miscategorized as a

---

[4] Williams received various other sanctions pursuant to the Code 224 and 316 violations but does
not dispute their validity.  (Dkt. 1 at 5.)

violation of Code 108, a greatest category offense in FBP Code, rather than Code 305, a moderate category offense. (*Id.*)  While the recommended sanctions for greatest category offenses include forfeiture of non-vested good conduct time, the recommended sanctions for moderate category offenses do not. *See* 28 C.F.R. § 541. 3, Tbl. 1.  Williams argued that because he was never provided notice that possession of a cellular telephone would be categorized as a Code 108 violation, his right to due process had been violated and he was entitled to restitution of his good conduct time. (Dkt. 1, Ex. 3 at 1.)

The regional director rejected Williams' appeal on December 23, 2010. (Dkt. 1, Ex. 2 at 1.)  Williams was notified of the regional director's rejection on January 5, 2011. (*Id.*)  The regional director rejected the appeal on three grounds: (1) Williams failed to submit a complete set of the documents he was required to submit; (2) Williams' appeal was more than one continuous page; and (3) Williams' appeal was untimely. (*Id.*)

Williams appealed the regional director's decision.  The FBP central office received documentation of the appeal on January 28, 2011.[5] (Dkt. 1, Ex. 5.)  On February 15, 2011, the general counsel rejected Williams' appeal as untimely because it was not filed within thirty calendar days from the date the regional director's decision. (Dkt. 10, Ex. 3.)  The pending § 2241 petition followed.

Williams' main argument is that possession of a cellular telephone should have been categorized as a Code 305 offense rather than a Code 108 offense. (Dkt. 1 at 5.)  He argues that (1) his due process rights were violated because he was never notified of the punishment for the charged conduct; (2) the FBP changed its rules in violation of the Administrative Procedure Act

---

[5]  The court notes that there is a discrepancy of over a week between the date Williams dated the appeal (January 19, 2011), and the date on which it was stamped as received by the central office (January 28, 2011).  Neither party addresses the discrepancy.  But, as discussed in this opinion, Williams' petition would fail in any event, both because his first appeal was not timely filed and on the merits.

("the APA"); (3) Code 108 is unconstitutionally vague; and (4) he was treated differently from other similarly situated inmates in violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution.  (*Id.* at 3.)

## LEGAL STANDARD

Absent its suspension, the writ of habeas corpus is available to every individual detained in the United States.  *See Hamdi* v. *Rumsfeld*, 542 U.S. 507, 525, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) (quoting U.S. Const., Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.")).  A writ of habeas corpus is an extraordinary remedy that should not be issued merely to "do service for an [additional] appeal."  *Bousley* v. *United States*, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (quoting *Reed* v. *Farley*, 512 U.S. 339, 354, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994)).

Prisoners seeking to overturn the results of an administrative hearing that resulted in a loss of good time credits must petition for a writ of habeas corpus.  *See Moran* v. *Sondalle*, 218 F.3d 647, 650-51 (7th Cir. 2000).  Although prisoners do not forfeit their rights under the Due Process Clause, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full array of rights due a defendant in such proceedings does not apply."  *Wolff* v. *McDonnell,* 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974) (citing *Morrissey* v. *Brewer,* 408 U.S. 471, 488, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

When an inmate faces the possible loss of good time credits in a disciplinary proceeding, he is entitled to certain due process protections. These include (1) advance written notice of the charges against him; (2) a written statement by the factfinders of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing in which he is afforded the right to call

witnesses and present evidence, (so long as doing so is not inconsistent with institutional safety and correctional concerns); (4) the opportunity to have non-attorney representation if the inmate is illiterate or the complexity of the hearing makes one necessary; (5) an impartial decision-maker; and (6) a written decision. *Id.* at 564-71. A federal court will only disturb the findings of fact of a disciplinary hearing officer if they are unsupported by any evidence, or when wholly arbitrary and capricious. *See Superintendent, Mass. Corr. Inst.* v. *Hill,* 472 U.S. 445, 456, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). Therefore, the question on review is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

## ANALYSIS

### I.      Exhaustion of Administrative Remedies

Courts generally do not grant writs of habeas corpus unless the petitioner has exhausted all other administrative remedies available to him. *Richmond* v. *Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). The Seventh Circuit has held that the (federal) common law exhaustion rule applies to § 2241 actions. *Id.* "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford* v. *Ngo,* 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *see also Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."); *Ihmoud* v. *Jett,* 272 F. App'x 525, 526-27 (7th Cir. 2008). Federal prisoners, like state prisoners, must comply with the FBP's "rules governing filing and prosecution of a complaint." *Ihmoud,* 272 F. App'x at 526-27 (citations omitted).

The FBP's grievance procedures require, at the initial stage, that inmates use the FBP's Administrative Remedy Program to challenge alleged deprivations of their rights. *See* 28 C.F.R.

§§ 542.10-19.  Appeals of DHO sanctions must be appealed to the regional director within 20 days of the complained occurrence.  *Id.* §§ 542.14, 542.15.  The grievance procedures further provide form and length requirements.  *Id.* § 542.15.  If an inmate wishes to appeal the regional director's decision, he may submit an appeal to the general counsel within 30 calendar days of the date the regional director signed the response.  *Id.*  Inmates have not exhausted their administrative remedies until each of their requests or appeals has been properly filed, meaning that they comply with all applicable deadlines and formatting rules.  *Id.*

Williams did not exhaust his remedies within the FBP administrative process.  Williams was properly notified of the DHO's decision when he took certified delivery of the DHO Packet on June 9, 2010.  (Dkt.1, Ex. 1 at 4.)  But he did not file his initial appeal to the DHO findings until December 16, 2010, over six months after he received notice of the DHO's findings, well outside the required 20-day appeal period.  In a letter accompanying this appeal, Williams acknowledged the delay in his filing but asked the regional director to accept his appeal despite its tardiness because he had been "in transit with no property or legal documents" and therefore unable to appeal within the deadline.  (Dkt. 1, Ex. 4 at 1.)  The regional director rejected these excuses, as he was entitled to do, and denied the appeal on December 23, 2010, because it (1) was untimely; (2) did not have the correct number of copies; and (3) included too many pages.  Williams thus has not exhausted his administrative remedies.

## II.  Exceptions To The Exhaustion Rule

In limited circumstances, courts may use their discretion to excuse the exhaustion rule when Congress has not clearly required exhaustion.  *See McCarthy,* 503 U.S. at 144; *Gonzalez* v. *O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).  Additionally, courts excuse the exhaustion

requirement when individual interests outweigh those of the agency or institution. *Id.* An

individual's interests likely outweigh the agency or institution's interests when:

> (1) Requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an indefinite timeframe for administrative action; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

*Iddir* v. *INS*, 301 F.3d 492, 498 (7th Cir. 2002) (internal quotations and citations omitted).

"[T]he hurdle is high" for a petitioner seeking an exception to exhaustion. *Richmond*, 387 F.3d

at 604. The petitioner need only meet one of the four *Iddir* criteria. *Iddir*, 301 F.3d at 498.

Williams does not explicitly point to *Iddir* or any of its exceptions but he does attempt to

raise "constitutional questions" in his habeas petition, implicating the fourth *Iddir* exception.

(*See* Dkt. 1.) As Williams has petitioned the court *pro se*, the court construes his filings liberally

and will examine whether the fourth *Iddir* exception should apply. *See Estelle* v. *Gamble*, 429

U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Williams' "constitutional question" is whether his due process and equal protection rights

have been violated. He makes four main arguments for why the DHO's finding violated his

constitutional rights: (1) his due process rights were violated because he was never notified of

the punishment for the charged conduct; (2) the FBP changed its rules in violation of the APA;

(3) the provisions of the Code at issue were unconstitutionally vague; and (4) he was treated

differently from other similarly situated inmates in violation of the Equal Protection Clause of

the Fifth Amendment.[6]

---

[6] The record does not reflect that the regional director considered Williams' argument that he could not have filed a timely appeal because he did not receive actual notice of the DHO's decision until November 29, 2010. Although Williams does not argue this as a due process violation, impossibility might suggest such a claim. *See, e.g., Armendariz-Garcia* v. *Werlinger*, No. 12-cv-659-wmc, 2013 WL 75779, at *4 (W.D. Wisc. Jan. 4, 2013) (quoting *Coleman* v. *Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)) (inmate who challenged result of prison disciplinary proceeding given opportunity to demonstrate "that some objective factor"

**A.      Whether Williams' Due Process Rights Were Violated by Failure to Notify Him of His Potential Punishment**

Williams argues that his due process rights were violated because he was not notified that possession of a cellular telephone had been "elevated" from a Code 305 to a Code 108 violation. (Dkt. 1 at 5.)  "Due process requires that inmates receive fair notice of a rule before they can be sanctioned for its violation." *Forbes* v. *Trigg*, 976 F.2d 308, 314 (7th Cir. 1992); *see also Rios* v. *Lane*, 812 F.2d 1032, 1038 (7th Cir. 1987) (inmate could not be punished when he was given "no prior warning that his conduct might be proscribed"); *Terry* v. *Morgan*, 930 F.2d 25, 1991 WL 54856, at *3 (7th Cir. Apr. 3, 1991) ("Although due process requirements may be less stringent when applied to prison regulations, a prison rule must nonetheless give the prisoner fair notice of the prohibited conduct.") (table decision).  The Seventh Circuit has held posting rules in the prison and explaining potential penalties provides inmates with sufficient notice of a prison policy.  *See Forbes*, 976 F.2d at 314 (posting prison's urine testing policy in petitioner's work station sufficient to find constructive notice); *Graham* v. *McBride*, 74 F.3d 1242, 1996 WL 19240, at *2 (7th Cir. Jan. 17, 1996) (same) (table decision).  But "[d]ue process does not require specific notice of a rule prohibiting an act commonly known to be unlawful."  *Ard* v. *Hanks*, 67 F. App'x 946, 949 (7th Cir. 2003).

Williams argues he was not given adequate notice that possession of a cellular telephone was categorized as a greatest category offense.  But the record indicates that he received advance written notice of the charges against him.  (Dkt. 1, Ex. 1 at 1.)  Williams had the opportunity to object to the charges and evidence against him, which he did.  (*Id.*)  Williams has not claimed that the DHO was not a neutral or detached body.  A staff representative advised Williams of his rights before the DHO on April 2, 2010 and he waived his right to representation for his hearing

prevented his "compliance with the procedural rule" of filing timely appeals or completing appeals process using FBP mechanisms).

before the DHO on April 14, 2010.  (*Id.*)  Finally, he was provided a written statement of the

DHO's findings and evidence relied upon in the form of the DHO Report.  (*Id.*)  Thus, Williams'

was provided with the necessary due process over the course of his disciplinary hearing.

Moreover, Williams argues that he was denied the due process of the law because he was

never notified of changes or amendments to the rules that possession of a cellular telephone was

"elevated" from a Code 305 violation to a Code 108 violation.  (*Id.* at 5.)  This argument is

grounded in the fact that sometime after Williams was sanctioned, the FBP changed the language

of Code 108 to specifically include "portable telephones" in the examples of "hazardous tools."

(*Id.* at 6.)  He claims that the change in language is evidence that cellular telephones were not

covered by the earlier version of Code 108 and his violation should therefore have been

classified under Code 305.  Williams concludes that the FBP violated due process by

"chang[ing] the legal consequences of [possessing a cellular telephone, thus] affecting good

conduct time credits."  (*Id.* at 5.)

Williams' argument is controverted by the facts.  The Warden at FCI-Ft. Dix warned

inmates on a number of occasions that possession of a cellular telephone might be charged with a

violation of Code 108.  (Dkt. 11, Exs. 1, 2, 3.)  A memorandum was issued to the prisoner

population on December 28, 2009, while Williams was at FCI-Ft. Dix, explicitly warning

inmates that those "found in possession of electronic communication devices, or related

equipment such as a cell phone, cell phone charger, . . . etc., will be charged with a violation of

Code 108, Possession Manufacture, or Introduction of a Hazardous Tool[.]"  (*Id.*, Ex. 3.)  This

memorandum supplemented similar ones from the Warden dated May 5, 2005, and October 4,

2006.  (*Id.*, Exs. 1-2.)  Williams was thus afforded all due process to which he was entitled.  He

had been put on notice not only that he could be punished for having a cellular telephone, but

also that having a cellular telephone would be charged under Code 108 and categorized as a greatest category offense.  He was notified of the charges against him before his hearing and was provided with ample opportunity to defend himself to the DHO.  The due process claim fails.

### B.   Whether the Interpretation of Code 108 Violated the APA

Williams argues that the FBP violated his due process rights by defining "hazardous tool" to include a cellular telephone without amending the Code pursuant to the APA.  (Dkt. 1 at 9.) Williams notes that there was a proposed amendment to Code 108 to include "portable telephones" through proper APA procedure, but the proposed language was not adopted until after his violation.  (*Id.* at 6.)  Williams argues that DHO's finding that possession of a cellular telephone was a violation of Code 108 is equivalent to enforcing the proposed language.  (Dkt. 1 at 9.)

The APA requires that requires that proposed regulations be published in the Federal Register for notice and comment procedures.  *See Metro. Sch. Dist. of Wayne Twp., Marion Cnty., Ind.* v. *Davila,* 969 F.2d 485, 488-89 (7th Cir. 1992).  But the APA does not require that administrative agencies follow notice and common procedures in the case of "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553; *see also Metro. Sch. Dist.*, 969 F.2d at 488-89.  Interpretive rules are statements "as to what the administrative officer thinks the statute or regulation means."  *Bd. of Trustees of Knox Cnty. Hosp.* v. *Shalala*, 135 F.3d 493, 501 (7th Cir. 1998) (quotation marks and citation omitted). Courts defer to agencies' interpretation of their own regulations unless the interpretation is plainly erroneous.  *Fal-Meridian, Inc.* v. *U.S. Dep't of Health & Human Servs.*, 604 F.3d 445, 450 (7th Cir. 2010).  "The distinction between interpretive. . . and substantive (or 'legislative') rules is admittedly far from crystal-clear."  *Metro. Sch. Dist.*, 969 F.2d at 489 (quoting *Chem.*

*Waste Mgmt., Inc.* v. *EPA*, 869 F.2d 1526, 1534 (D.C. Cir.1989)).  To determine whether a rule is interpretive, the court considers the agency's own characterization of the rule, whether the rule simply states that an agency thinks a statute means or creates new laws, rights, or duties, and whether the rule relies upon the language of the statute and its legislative history.  Interpretive rules simply state what the administrative agency thinks the underlying statute means and reminds affected parties of existing duties.  *Metro. Sch. Dist.*, 969 F.2d at 489 (citations omitted).

Williams' argument regarding the APA fails because Code 108 is an interpretive rule, and the inclusion of cellular telephones in that rule was at the FBP's discretion.  *See Hall* v. *Zickefoose*, 448 F. App'x 184, 186 (3d Cir. 2011) (FBP could interpret Code 108 to include cellular telephones because it is an interpretive rule and inclusion of cellular telephones did not add language to or amend the regulation).  The FBP is entitled to interpret Code 108 as it sees fit and need not endure the onerous notice and comment procedures to do so.  *See id.*  The later amendment of Code 108 to explicitly include cellular telephones does not change this analysis.  Code 108 as it was in force when Williams was disciplined defined a "hazardous tool" as an item that is ". . . most likely to be used in an escape or escape attempt or to serve as a weapon, or capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade."  28 C.F.R. § 514.13, Tbl. 3 (2009).  This list is not exhaustive.  By way of example, explosives, rope, blueprints of the prison, maps of surrounding areas, or any number of other tools are surely likely to "be used in an escape or escape attempt" but they were not listed as examples of "hazardous tools."  *Id.*  Code 108 thus confers a degree of latitude to DHOs in determining what is a "hazardous tool" in the interest of institutional safety, and determining that a cellular telephone is a "hazardous tool" is not clearly wrong or inconsistent with Code 108.

Moreover, many courts have concluded that it is not plainly erroneous to classify cellular telephones as "hazardous tools."  *See e.g.*, *Hall*, 448 F. App'x at 186; *Acevedo-Garcia* v. *Rios*, No. 12 C 1113 (C.D. Ill. June 11, 2012), ECF 8 at 4.[7]  A cellular telephone allows an inmate to communicate with individuals outside of the prison without the supervision of FBP authorities. The DHO's conclusion is both reasonable and within the spectrum of interpretive latitude afforded to the FBP in applying its disciplinary code.

C.      **Whether the Regulation is Unconstitutionally Vague**

Williams next argues his due process rights were violated because Code 108 was unconstitutionally vague.  (Dkt. 1 at 11.)  "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned* v. *City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).  "A regulation must be sufficiently definite to give people of ordinary intelligence notice of the conduct it prohibits."  *Isby-Israel* v. *Finnan*, 347 F. App'x 253, 255 (7th Cir. 2009) (citing *United States* v. *Turcotte*, 405 F.3d 515, 531 (7th Cir. 2005)).  "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."  *Vill. of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

Vagueness principles extend to prison regulations.  *See Koutnik* v. *Brown*, 456 F.3d 777, 783 (7th Cir. 2006).  Regardless, "[s]ome open-ended quality is essential if a prison is to have any guidelines," *id.* (quoting *Borzych* v. *Frank*, 439 F. 3d 388, 391 (7th Cir. 2006)), as latitude is

---

[7]  *See also Robinson* v. *Warden*, 250 F. App'x 462, 464 (3d Cir. 2007); *Myrieckes* v. *Caraway*, No. L-11-917, 2012 WL 527585, at **6-7 (D. Md. Feb. 16, 2012); *Douglas* v. *Zickefoose*, Civ. No. 11-406, 2012 WL 266364, at *14 (D.N.J. Jan. 27, 2012); *Knaub* v. *Zickefoose*, Civ. No. 11-938, 2011 WL 6153701, at **6-7 (D.N.J. Dec. 12, 2011); *Garcia* v. *Zickefoose*, Civ. No. 10-1725, 2011 WL 6179785, at **9-12 (D.N.J. Dec. 12, 2011); *Hudson* v. *Zickefoose*, Civ. No. 10-0251, 2010 WL 4746220, at *3 (D.N.J. Nov. 15, 2010).  Most of these cases involve prisoners at FCI-Ft. Dix.

necessary to ensure safety and order in a dangerous prison environment.  *See Meyers* v. *Aldredge*, 492 F.2d 296, 310 (3d Cir. 1974); *Wolfel* v. *Morris*, 972 F.2d 712, 717 (6th Cir. 1992). Courts defer to prison authorities' expertise when interpreting prison rules "unless fair notice was clearly lacking."  *Hadden* v. *Howard*, 713 F.2d 1003, 1008 (3d Cir.1974).  "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness."  *Terry* v. *Morgan*, No. 87 C 8575, 1990 WL 70868, at *5 (N.D. Ill. Apr. 30, 1990), *aff'd* 930 F.2d 25 (7th Cir. 1991) (quoting *Vill. of Hoffman Estates,* 455 U.S. at 495 n. 7) (rejecting inmate's void for vagueness argument).

    In this case, the prison staff repeatedly clarified and warned prisoners that possession of cellular telephones and chargers would be punishable under Code 108.  (Dkt. 11 Exs. 1, 2, 3.) Additionally, the definition of "hazardous" in Code 108 extends to tools that may be used "in an escape attempt" and endanger "institutional safety."  These terms clearly provide notice to reasonable prisoners of ordinary intelligence that possession of a cellular telephone could be punished under Code 108.  *See Hall*, 448 F. App'x at 186 (court "not persuaded that [Code] 108 is unconstitutionally vague" when applied to possession of cellular telephones).  The DHO found that possession of the cellular telephone was a violation of Code 108 because it was likely to be used in an escape attempt and it was hazardous to institutional security.  (Dkt. 1 Ex. 1 at 3.) Williams' vagueness challenge fails.

    **D.    Whether the FBP Violated the Equal Protection Clause**

    Williams' final claim is that the FBP violated the Equal Protection Clause of the Fourteenth Amendment by treating him differently from similarly situated prisoners by choosing to classify his violation under Code 108 instead of Code 305.  He argues that this unequal treatment was the result of intentional or purposeful discrimination.

The Equal Protection Clause of the Fourteenth Amendment provides "no State shall…

deny to any person with its jurisdiction the equal protection of the laws." U.S. Const. Amend.

14. "Prisoners do not surrender their rights to equal protection at the prison gate." *Williams* v.

*Lane*, 851 F.2d 867, 881 (7th Cir. 1988). "Unequal treatment among inmates, however, is

justified if it bears a rational relation to legitimate penal interest." *Id.* (citing *Hudson* v. *Palmer*,

468 U.S. 517, 522-23, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). Penal interests include security

and discipline. *Hudson*, 468 U.S. at 523.

To establish a claim under the Equal Protection Clause, Williams must demonstrate that

(1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated

differently from members of the unprotected class; and (3) the respondent acted with

discriminatory intent. *See Greer* v. *Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000); *see also Green*

v. *Dart*, No. 12 C 5377, 2013 WL 3853808, at *7 (N.D. Ill. July 23, 2013). In addition, Williams

can establish a "class-of-one" equal protection claim by demonstrating that he was intentionally

treated differently from others who are similarly situated and there was no rational basis for the

different treatment. *See Green*, 2013 WL 3853808, at *7 (citing *Engquist* v. *Oregon Dep't of

Agriculture,* 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008); *Village of

Willowbrook* v. *Olech,* 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)).

Other than generally alleging that prison officials acted "by fiat" in choosing which Code

provision to apply to prisoners found with cellular telephones, the only concrete allegation

Williams makes is that another prisoner had his Code 108 punishment expunged. In particular,

he points to the facts of *Neagle* v. *Grondolsky*, Civ. No. 09-2016, 2010 WL 2546021 (D.N.J.

June 18, 2010), as evidence that he was treated differently from a similarly situated prisoner. In

*Neagle*, an inmate was disciplined for possession of tobacco, snuff, creatine, vodka, and a

15

cellular telephone.  *Id.* at *2.  The inmate was charged with violating both Code 108 and 305.  *Id.*

On administrative appeal, the Northeast Regional Office expunged the Code 108 violation, but

the district court opinion provides no indication of why this may have happened or how the FBP

interpreted Code 108 over the course of the disciplinary proceedings.  *See id*.  Williams does not

provide the court with any other information regarding that inmate's specific characteristics,

prior criminal history, behavioral history while in prison, or disciplinary proceedings.  His bare

assertion that Neagle was treated differently because his Code 108 violation was expunged and

Williams' was not because prison officials had animus towards him is insufficient to make out an

equal protection claim.

Moreover, and as discussed more fully above, a string of cases from FCI-Ft. Dix upholds

the FBP's decision to categorize the possession of a cellular telephone as a Code 108 violation.

*See supra* n.7.  These cases illustrate that the treatment of Williams was not unique.  Finally,

Williams has not provided any evidence to suggest that the allegedly disparate treatment was

intentionally discriminatory.  His equal protection argument thus fails.

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is hereby denied.

Dated:   April 28, 2014

Enter:

JOAN HUMPHREY LEFKOW
United States District Judge